Ruffin, C. J.
 

 In 1832 the plaintiff and the defendant, Woodruff, for the accommodation of John Sloan, endorsed a note made by Sloan for the sum of $1635, which was discounted at bank for the benefit of Sloan, who received the money. When application was made to Woodruff to en. ■dorse the note, he refused; and, upon his doing so, the plaintiff, Davidson, also requested him to give his indorsement and agreed that he would guarantee the payment by Sloan, and thereupon Woodruff indorsed. Before the note fell due( Sloan became insolvent, and Woodruff paid the amount.— He then instituted his action against Davidson on, his guar
 
 *468
 
 anty, and, in May, 1833, recovered a judgment for the prin- and interest due on the note. At that time all the par' 1 ties lived in the village of Charlotte, m Mecklenburg County; but soon afterwards Woodruff removed to New-Jersey.. — The bill was filed in December, 1836, and states, that, at the rendering of the judgment, the plaintiff was much embarrassed with debt, and had conveyed his property, which was large, to trustees to secure the payment of those debts; which circumstance prevented the plaintiff at law. Woodruff, from getting satisfaction on the executions issued on his judgment. But that, recently before the filing of the bill, Davidson had .discharged the incumbrances on his estate, and that Wood-ruff then .caused an execution to be levied and was about to sell. That, under these circumstances, he then applied to jSloan to know the state of the affair; and, for the first time learned, from Sloan, that prior to the recovery of the judgment against Davidson, namely, in April, 1833, Sloan had made payments to Woodruff, and transferred to him debts and demands against other persons to a greater value than the sum paid by Woodruff on Sloan’s note, and that those payments and transfers were made and accepted .on the express condition, that Woodruff should not proceed at law against Davidson, either as a co-surety or upon his guaranty) until he had used diligent efforts to collect the demands transferred, and had failed therein. The bill then states that, amongst the claims thus received by Woodruff, was an order drawn by Sloan on one Charles Elms for $100 in favor of Woodruff, and also the interest of said Charles Elms in the estate of one George Barnett, deceased, late of South Carolina, which interest was of the value of $2000:” That there were also many other claims, of which the said Sloan took a list or schedule, which, as Sloan informed the plaintiff, he had lost, and that therefore the plaintiff cannot specify any other of the said claims or their value. The bill then .charges, that Woodruff concealed from the plaintiff the payments and assignments aforesaid and the agreement with Sloan, with the intent to prevent him from making a defence at law; and that the plaintiff was wholly ignorant of any of those matters, until a very short time before the filing of the
 
 *469
 
 bill; and that the plaintiff is informed by Sloan and believes, that Woodruff has either received, or might with reasonab
 
 l
 
 e diligence have received, a larger sum on the assignments from Sloan than would have satisfied his judgment. The bill, therefore, seeks a discovery of the debts assigned; what has been received on them, and the steps taken on them, and their present condition; and for an injunction and general relief.
 

 The answer of Sloan admits all the charges of the bill. That of Woodruff admits the statements in the bill in reference to the indorsing of the note, the plaintiff’s guaranty, Sloan’s insolvency, and the taking of the judgment at law. But it denies positively and directly, that Sloan ever made any assignment or conveyance of property or securities, in satisfaction or security of the judgment or the demand on which it is founded, except an order on Elms; or that this defendant ever made any agreement with Sloan, upon that or any other consideration, not to sue the present plaintiff on his guaranty and collect the money from him. The answer admits that Sloan proposed to place in this defendant’s hands some demands, to be collected and applied to the payment of his debt, among which was one relating to the estate of one George Barnet. But this defendant denies that he knows the character or value of that claim or of any one of the others, or that he ever agreed to take them. On the contrary, the answer states, that this defendant only consented to shew them to his counsel and take his advice on them — -being willing to accept them, if worth any thing; and that he did shew them to his counsel, and was informed that they were bad andnot collectable, and was advised not to take them; and that, thereupon, this defendant desired the counsel (a gentleman of the bar, since dead) to return the papers to Sloan, and it was done. The answer admits that Sloan gave this defendant an order on C. Elms for $100, on account of this debt; but it denies that Elms paid any thing on the order, and states that he, this defendant, left it, with other papers, in this State, when he removed to New Jersey; and the answer then avers that the order on Elms was the only claim ever received from Sloan by this defendant, and denies that
 
 *470
 
 this defendant ever concealed from the plaintiff any part of the transactions between him and Sloan.
 

 Upon the coming- in of the answers, the court dissolved the injunbtion as to all except $100, being the amount of the order on Elms, and, as to that sum, directed the plaintiff to have credit on the judgment; to which the defendant submitted. The plaintiff then replied to the answer of Wood-ruff. and the cause stood over as upon an original bill, and, proofs having been taken, the cause was set for hearing and transferred to this cSurt.
 

 Among the plaintiff’s proofs is the deposition of Sloan, the principal debtor, taken under an order, subject to all just exceptions. It is objected to on the part of the defendant; and the first question in the case is upon that objection. In the opinion of the court, Sloan is not a competent witness between these parties, to establish satisfaction made to his co-defendant. He could not have been a witness on the trial at law, for that purpose, because his liability to Davidson was for more than that to Woodruff. To the former he would be liable for the debt and the costs of that action paid by his surety, while to the latter he is liable for the debt only. Now, the present proceeding is but a new trial in another forum, upon the ground that the plaintiff lost his defence at law.
 

 The other material evidence is an order of Sloan on Elms to pay Woodruff the sum of $100, and a receipt dated April, 1833, given by Woodruff to Sloan for that order, to be applied to Sloan’s note taken up by Woodruff; and the deposition of Charles Elms. It does not appear from which side the order on Elms comes: whether Elms produced it, or whether it was found among the papers of Woodruff or those of his deceased counsel. It has on it an acceptance by Elms, but no receipt from Woodruff, nor any cancellation.
 

 The Witness Elms states, that in 1821 or 1822, or 1823, he was very largely indebted for merchandise to one Goodman of Charleston, in South Carolina, and confessed judgment thereon for upwards of thirty thousand dollars; and, by way of collateral security, assigned to the creditor bonds and notes to an amount somewhat exceeding $20,000: That Goodman collected upon the assigned elaims about the sum
 
 *471
 
 of $10,000; and that, after applying that sum and other payments made by the witness, there remained a balance due on the judgment of $9000, or upwards: That Goodman himself failed in 1825, and made an assignment to a trustee for his creditors; but that Goodman and his trustee wrote to him, Elms, that they still held of the assigned claims about gl(),000 or $12,000; and that, if Elms would pay $1000, on the debt to them, they would acknowledge satisfaction op the judgment against him, and also resign to him all the remaining and uncollected notes or securities. He then states that in the latter part of 1832, being indebted to John Sloan about $2500, and also to Robert Watson upwards of $2000, he transferred to Sloan and Watson, as a security for their debts, all his interest in the debts originally assigned to Goodman, and handed them over the letter from Goodman and his trustee; and also|transferred or assigned to them
 
 “
 
 a bunch of promissory notes in the hands of Thomas M’Clnre in Chester, South Carolina, amounting to-about $1200, subject to the payment of about $50;” and also transferred all the interest in the estate of George Barnett, late of South Carolina, deceased, which Elms had on the husband of a sister of said George; and that said estate consisted of land and a wagon and team and other chattels,- of the value, altogether,-of $2000, but that the mother of said George had a life estate in the land, and that she and the rest of the family removed to Tennessee in 1833. The witness then enumerates several of the debts transferred to Goodman, which he thinks were good; but he is unable to say, whether any of them were among those which Goodman had not collected and still held, as stated by him and his- trustee.
 

 This witness then states, that- he accepted and afterwards paid in 1833, to Woodruff the order drawn on him by Sloan for $100. When Woodruff presented that order, the witness states, that Woodruff consulted him on other papers, which Sloan had offered to give him, and asked him, whether the papers, he, the witness, had let Sloan have were good or not, and was informed by the witness, that some of them could be collected if proper exertions were made. And that Wood-ruff subsequently informed the witness, that he had got
 
 *472
 
 Sloan’s right to these papers and was to use all exertions to collect them, before he could go on Davidson the plaintiff.
 

 The other evidence consists of the depositions of two persons, who say that the father of George Barnett had a lease for years of some Indian lands, containing between two and three hundred acres and worth 3 or §4 per acre, and that he left a widow and six children, and George claimed the land after the death of the widow, and if he was so entitled, his estate would be worth perhaps, $1500; but that he died in 1831, and the'mother and the family except Mrs. Elms, removed before- 1S33: to the western part of Tennessee, where the mother carried all the personal property, and where she is still living.
 

 Upon this evidence- the court is constrained to say, that the plaintiff is not- entitled to relief, against the direct and precise denials in the answer,- that Woodruff had received any money on the supposed assignments to him,- or that he had ever received from Sloan- such assignments-or any such security,- excepting only the order for $100: The contrary is not pointedly stated in Elms’ deposition. He
 
 does
 
 not profess to have any personal knowledge of the transaction, whatever it was, between Sloan and Woodruff. He only speaks, from recollection,-of what he thinks Woodruff said, after consulting him in respect of the claims he had transferred to Sloan and Watson. He' was not only not present at the negotiation between Sloan and Woodruff, but he does not profess to have seen any assignment by Sloan, nor even his own assignment to Sloan and Watson, in the possession of Woodruff. It is easy, therefore,-for him to mistake the statement by Woodruff of Sloan’s proposition or offer, as a statement of a final arrangement. Besides, the witness, although not excluded by interest, is under a strong bias to make these claims effectual to Sloan in payment to Woodruff, because thereby he may, with a better face, insist on them as a payment from himself to Sloan and Watson. There are other circumstances of strong suspicion, that the witness either mistook the statement of Woodruff or misrepresented it. In the first place, the delay in filing this bill and setting up the supposed assignment, forcibly corroborates the statement of the answer.
 

 
 *473
 
 It is said in the bill, that the plaintiff was not informed of the alleged assignments, until just before the bill was filed. Admit it; and there seems to be the stronger reason for holding the information, thus received by him, to be untrue. It would be hardly credible, upon explicit and unbiassed evidence, that Sloan should have had such a transaction with Woodruff and made the alleged stipulation to protect his friend Davidson,- until Woodruff had- failed, after a- trial, to receive his debt out of'the claims assigned,- and-, yet, that he should not for nearly four years have informed that very friend of the' care he had taken of his interest, although the parties lived in the same vi-lliage. The silence of Sloan upon that point, to say nothing of that of Elms and Woodruff,affords a strong presumption, that-, although he may have offered such a transfer, yet it was never completed. Then that presumption- is further fortified by the circumstance,, that not one of the claims, supposed to have been assigned, is traced by any other person to Woodruff’s' hands;- nor any dealing shewed with one of them; by him at any time; nor even an enquiry made by him except from Elms.- He could-have no-motive to accept them, merely to suppress them.
 

 Moreover, if such an-assignment had-been made, we cannot doubt that some permanent acknowledgment- of the receipt of the' papfers by Woodruff, and-of the terms, would-have been taken. We-'find that Sloan took a receipt-for the' glOO — not which he paid, but for which-he gave an order on Elms, and yet it is suggested that he assigned demands to the amount of many thousand-dollars, to the surplus of which he would be entitled,-without-.the smallest scrip to shew it. Again, the worthlessness- of the claims, obvious to any man of even a slight knowledge of business, repels the belief that W'oodrnff could have entered into the supposed agreemen-t, or,, indeed,- accepted the assignment upon any terms interfering with his immediate recourse on Davidson. The value of the claims for ten or twelve- thousand dollars, held by Goodman’s assignee, may be readily inferred-from the acknowledged’facts, that they had been s6 hefd'for ten or' twelve years, and that, no doubt, in answer to an enquiry' from Elms as to the state of the debt he owed them; they in-'
 
 *474
 
 form him, that for $1000 they will not only give up those c^a™s ^ut a's0 ^le judgment against Elms himself, on which a balance of upwards of $5000 was due. To use the mildest term, it is not probable that Woodruff would undertake to pay those persons the sum of $1000, for the sake of getting possession of securities in South Carolina, on which persons, residing there, had not been able to realize a cent in so long a period. The same may be said of what the witness calls a “bunch of notes” in the hands of McClure in S. C., on whom does not appear, for $1200, pledged for $50, but at what time does not appear. The very circumstance of pledging notes to such an amount for so paltry a sum as $50, and without specifying the debtors, assures one, that they could not have been worth looking after; especially, as no evidence is given, that a single one of the debtors, or of those whose notes Goodman held, was in 1833, or at any time since, solvent. The evidence is equally deficient in establishing such a value for Elms’ share of Barnett’s property, as would induce the belief that it was worth prosecuting. His father’s will is not shewn, to establish his right to
 
 the
 
 land.
 
 But even
 
 if it belonged to him after the death of the mother and he died intestate and owed no debts, the share of Elms and wife would be worth only between two or three hundred dollars; for the possibility of recovering which Woodruff would have hardly undertaken to go, first, to South, Carolina and then to the Western District of Tennessee.
 

 Impugned as the testimony of the single witness, Elms, is, by those concurring circumstances, and corroborated as the statements of the answer are by them, the latter must, according to the law of this court, prevail.
 

 We cannot believe or say, that the alleged assignments were made to the defendant Woodruff; and, therefore, as to every thing except the sum of $10Q, already decreed to the •plaintiff, the bill must be dismissed, and with
 
 costs
 
 to the defendant Woodruff.
 

 Per Curiam, Decree accordingly.